ORIGINAL

FILED

1  JAMES A. BRYANT II (State Bar No. 255652)
2  THE CONSUMER ADVOCATE LAW GROUP, P.C.
3  4929 Wilshire Blvd. Suite 1010
   Los Angeles, California 90505
4  Telephone:   310-860-6231
5  Facsimile:   310-802-3829
   Email:       james.bryant@thecalawgroup.com
6
7  Attorney for Plaintiff
   ANTOINETTE M. BROOKS
8
9              UNITED STATES DISTRCT COURT
10
11            CENTRAL DISTRICT OF CALIFORNIA
12

13  ANTOINETTE M. BROOKS,            Case No.:  CV 10-05419 RGK (SSx)

14          Plaintiff,               **SECOND AMENDED**
15                                   **COMPLAINT FOR**
                                     **NEGLIGENCE; BREACH OF**
16     vs.                           **CONTRACT; BREACH OF**
17                                   **IMPLIED COVENANT OF GOOD**
    HOMECOMINGS FINANCIAL,           **FAITH AND FAIR DEALING;**
18  LLC; GMAC MORTGAGE LLC;          **UNFAIR COMPETITION AND**
    STERLING APPRAISALS, INC.; and   **BUSINESS PRACTICES**
19  DOES 1 through 10, inclusive,
20
21          Defendants.              Complaint Filed: 6/22/2010
                                     Trial Date: 7/12/2010
22                                   **DEMAND FOR JURY TRIAL**
23
24
25
26
27
28

                                   1

## VERIFIED COMPLAINT

Plaintiff Antoinette M. Brooks ("Brooks"), by her attorneys, The Consumer Advocate Law Group, for its Second Amended Complaint alleged herein against Sterling Appraisals, Inc. ("Sterling Appraisal"), Homecomings Financial, LLC ("Homecomings"), and GMAC Mortgage, LLC ("GMACM") alleges as follows:

## NATURE OF ACTION

1.   This action arises out of the negligent acts committed by Defendant Sterling Appraisal and breach of contract committed by Defendants Homecomings and GMACM in relation to a loan that was funded and serviced by the Defendants Homecomings and GMACM. Because of the negligence and breach of contract committed by Defendants, Plaintiff's home is currently in active foreclosure and has suffered severe emotional distress as a result of Defendants' cruel and reckless acts.

## PARTIES

2.   Plaintiff is a disabled individual diagnosed with the debilitating disease Multiple Sclerosis and is residing at 3791 S. Normandie Avenue, Los Angeles, California (the "Property").

3.   Plaintiff is informed and believes and on that basis alleges that Defendant Homecomings, formerly known as Homecomings Financial Network, Inc., is a Delaware limited liability company with its principal executive offices in Minneapolis, Minnesota. Homecomings served as both the loan originator and servicer of the loan.

4.   Plaintiff is informed and believes and on that basis alleges that Defendant GMACM, formerly known as GMAC Mortgage Corporation, is a Delaware limited liability company with its principal executive offices in Fort Washington, Pennsylvania. GMACM served as the servicer of the loan.

5.   Plaintiff is informed and believes and on that basis alleges that Defendant Sterling Appraisal is a California corporation with its principal executive offices in

2

1  Laguna Hills, California.  Sterling Appraisal compiled the Appraisal Report used

2  to determine the value of the Property.

3     6.   Plaintiff does not know the true names or capacities of Defendants sued in

4  this complaint as Does 1 through 10, inclusive, and who are sued by such fictitious

5  names. Plaintiff will amend this complaint to allege said names and capacities

6  when the information has been ascertained. Plaintiff is informed and believes and

7  on that basis alleges that each of the fictitiously named Defendants is legally

8  responsible in some manner for the acts or omissions alleged and the injuries and

9  damages claimed in this complaint, or in some manner claims an ownership,

10  security, or other interest in the Property.

11     7.   Plaintiff is informed and believes, and upon such information and belief

12  alleges, that each of the fictitiously named Defendants is responsible in some

13  manner for the acts and occurrences alleged hereafter, and each of the Defendants

14  was authorized and empowered by the remaining Defendants to, and did, act as the

15  agent and/or employee of the remaining Defendants in that Plaintiff's losses as

16  herein alleged were proximately caused by their actions.  At all times relevant

17  herein, each of the Defendants was the agent or employee of each of his, her or its

18  co- Defendants and was at all times relevant herein acting within the purpose and

19  scope of such agency or employment.  At all times herein below, unless otherwise

20  specified, Homecomings, GMACM, Sterling Appraisal and Does 1 through 10,

21  inclusive, will be referred to collectively as "Defendants."

22                        **GENERAL ALLEGATIONS**

23     8.   The real property that is the subject of this action consists of a residential

24  home located at what is commonly known as 3791 S. Normandie Avenue, Los

25  Angeles, in Los Angeles County, and is referred to in this Complaint as the

26  "Property."

27     9.   The Property is identified by the Los Angeles County Office of Recorder as

28  AIN: 5036-001-014, a full legal description of the Property is incorporated herein

**SECOND AMENDED COMPLAINT**

1     as <u>Exhibit A</u>.

2     10.    In or around July of 1995, upon the death of Plaintiff's father, Plaintiff was

3     conveyed title to the Property through an intra-family transfer.

4     11.    In or around the early part of 2006, Plaintiff began making many

5     improvements to the Property, including plans to convert an attached garage into

6     additional livable space (the "Project").

7     12.    In or around April of 2006, in order to finance the Project Plaintiff

8     refinanced the Property with Homecomings for $165,000.00.

9     13.    On or about June 20, 2006, Plaintiff applied for and was granted a Building

10     Permit and Certificate of Occupancy by the Department of Building and Safety for

11     the City of Los Angeles, (the "Building Permit"), incorporated herein as <u>Exhibit B</u>,

12     for the proposed conversion of the attached garage.

13     14.    In November of 2006, Plaintiff completed the first phase of the Project by

14     converting the garage into livable space which included installation of new

15     drywall, insulation and a kitchen area with a sink and stove.

16     15.    On or about November 21, 2006, Plaintiff applied for and was granted

17     another Permit and Certificate of Occupancy by the Department of Building and

18     Safety for the City of Los Angeles, (the "Supplemental Building Permit" and

19     collectively with the Building Permit the "Building Permits"), incorporated herein

20     as <u>Exhibit C</u>, for the addition of a bathroom to the converted den.

21     16.    On or about the early December of 2006, the additional bathroom to the den

22     conversion was completed.

23     17.    Sometime between November and December of 2006, Plaintiff required

24     more funds to complete other improvements to the converted den. Because of this

25     Plaintiff again applied for additionally refinancing of the Property with Defendant

26     Homecomings.

27     18.    On or around November 30, 2006, Defendant Homecomings delivered to

28     Plaintiff a Commitment Letter conditionally approving the Plaintiff for a loan in

**SECOND AMENDED COMPLAINT**

1  the amount of $459,000.00 with a loan-to-value ("LTV") of 70.69% at 30 year

2  fixed rate of 6.75% (the "November Commitment"). The November Commitment

3  further stated that it had an expiration date of March 28, 2007.

4  19.   On or about December 12, 2006, after issuing the November Commitment

5  Defendant Homecomings hired Defendant Sterling Appraisal, on behalf of the

6  Plaintiff, to perform an appraisal on the Property.  Sterling Appraisal's Steve

7  Madrid conducted an internal and external appraisal of the Property. Upon

8  completion of his appraisal Mr. Madrid then drafted and executed a Uniform

9  Appraisal Report of the Property valuing it at $523,000.00 (the "Appraisal

10  Report"),  significantly less than the value amount stated in the November

11  Commitment incorporated herein as Exhibit D.

12  20.   On or about December 27, 2006, after Sterling had completed and submitted

13  the Appraisal Report to Homecomings loan processing department for further

14  underwriting, Homecomings delivered to Plaintiff a separate Commitment Letter

15  except this time the loan amount had decreased from $459,500.00 to $444,500.00

16  and the LTV of 84.99% significantly changed from 70.69% to 84.99% (the

17  "December Commitment"), incorporated herein as Exhibit E.

18  21.   Plaintiff, who is not a sophisticated real estate investor or developer, nor

19  does she posses any educational background in real estate finance or its processes,

20  was in badly need of the refinance proceeds in order to complete the Property's

21  improvements and reasonably relied on the belief that Defendants  Sterling

22  Appraisal, who specializes in the appraisal of residential property, accurately

23  appraised the value of the of Plaintiff's property, as this valuation would have a

24  significant impact on the borrowers loan.

25  22.   For the aforementioned  reasons Plaintiff accepted the terms of the

26  December Commitment without knowledge that it would later be discovered that

27  the terms of the December Commitment were flawed based upon Sterling

28  Appraisal's negligent failure to properly appraise the Property.

SECOND AMENDED COMPLAINT

23.    On or around December 28, 2006, Defendant Homecomings and Plaintiff entered into a promissory note in the amount of $444,500.00 (the "Note") secured by a deed of trust recorded in the Los Angeles County Office of Recorder as instrument number 20071196823 on May 15, 2007 (the "Deed of Trust"). The Deed of Trust governed amongst other things the duties of servicing the Note between Plaintiff and Defendants GMACM and Homecomings (collectively the "Defendant Servicers"). The final terms of the Note called for Plaintiff to make principal and interest payments in the amount of $2,883.02 at a fixed rate of 6.75% for 30 years.

24.    In addition to the Note, Plaintiff was forced to make monthly payments for private mortgage insurance ("PMI") in the amount of $303.74 based upon the values represented by Defendant Sterling Appraisal's erroneous Appraisal Report. The erroneous Property value caused Plaintiff's LTV to exceed an 80% threshold by 4.99% or 84.99%.

25.    It is a standard residential lending practice that whenever a home owner's LTV exceeds 80% a lender will require to pay for additional PMI for the benefit of the lender due to the fact that such a borrower has a higher risk of default on their mortgage than those borrowers whose LTV is under 80%. If a borrower were to default on their loan a lender could submit a claim to the private mortgage insurer for reimbursement a portion of its losses incurred due to a borrower's default.

26.    In addition, Plaintiff agreed to open an escrow account with Defendant Homecomings in order to manage Plaintiff's taxes and insurance in the amount of $226.15 monthly, broken down as $143.06 for taxes and $83.11 for insurance by way of an impound authorization (the "Impound Authorization") incorporated herein as Exhibit F.

27.    At the time of the refinance the Property identified as APN 5036-001-014, the Los Angeles County Tax Assessor had given the Property a total assessed value of $132,313 for a bi-annual payment of $858.25. By the 2007 – 2008 tax year

6

**SECOND AMENDED COMPLAINT**

1  assessment Plaintiff's property taxes increased slightly to a bi-annual payment of

2  $870.22 for a total yearly tax payment of 1740.44. A copy of the 2007 – 2008 Los

3  Angeles County Tax Collector assessment is incorporated herein as <u>Exhibit G</u>. (All

4  loan documents including the Note, DOT, Impound Authorization and any other

5  documents associated with the consummation of the December 2006 loan are

6  herein referred to as the "Loan Documents").

7  28.  Upon the funding of the loan $26,845.00 was dispersed to Plaintiff and

8  further utilized to fund the Property's home improvement projects.

9  29.  In or around February 2007, Defendant Homecomings began sending

10  Plaintiff mortgage statements in the amount of $3,109.17 which Plaintiff timely

11  paid each month. However, by August of 2007, a mere eight months after the loan

12  was consummated Plaintiffs mortgage payment shockingly increased an additional

13  $1,035.18 to a total monthly payment of $4,144.35 without any explanation from

14  Defendant Homecomings.

15  30.  Despite the fact that Plaintiff's mortgage increased by more than 25%

16  without explanation, Plaintiff continued to make timely payments. However,

17  sometime between May and June of 2008 Plaintiff began encountering difficulties

18  in making timely payments due to the fact that Plaintiff's mortgage had increased

19  many times more than had been represented to her.

20  31.  In or around early July of 2008, after making over an additional $1000 in

21  monthly mortgage payments, Plaintiff began to suspect that something was

22  seriously wrong with her mortgage. Although, Plaintiff had no formal

23  understanding of real estate finance Plaintiff began to investigate the unexplained

24  increase in payments to the best of her ability.

25  32.  In or around early July of 2008, Plaintiff reviewed the Appraisal Report, as a

26  result of her continued puzzlement of the increased monthly mortgage payments,

27  and she discovered that the Sterling Appraisal failed to properly calculate the

28  dwelling square footage of the Property. The Appraisal Report erroneously

1  calculated that the dwelling space of the Property was only "1,151 sq ft @ 100.00."

2  (Appraisal Report, Pg. 3). Further, the Appraisal Report identified the remainder of

3  the actual dwelling space as a "non permitted conversion," totaling 570 sq ft for a

4  value of $25 per square foot. Despite the fact that Plaintiff had been approved for

5  all necessary permits to convert the garage into a den, and at the time the Property

6  was appraised the permitted Project's first two phases were near completion,

7  Sterling Appraisal failed to properly calculate the garage conversion as a permitted

8  livable structure stating "[s]ubject has a non permitted garage conversion," when in

9  fact this was simply untrue. (Appraisal Addendum, Pg. 1). Had Sterling Appraisal

10 exercised reasonable care when its employee conducted the appraisal of the

11 Property, the Property's value would have been properly represented to the lender.

12   33.   Because the Appraisal Report was negligently prepared by Sterling

13 Appraisal, the Property was appraised at $524,000 increasing Plaintiff's LTV to

14 84.99% which ultimately lead to the financial burden of forced PMI.

15   34.   Defendant Sterling Appraisal, failed to properly appraise Plaintiff's Property

16 by failing to act in a reasonable and prudent manner. Had Defendant Sterling

17 Appraisal exercised reasonable care when appraising the Property it would have

18 discovered that that in fact Plaintiff had acquired all necessary permits for the

19 garage conversion and the Property's total livable space would have increased by

20 570 sq ft, thereby increasing the Property's value significantly. Sterling

21 Appraisals' failure to exercise reasonable care when appraising lead to the

22 undervaluation of the Property resulting in a costly and unnecessary PMI expense.

23 Defendant Sterling Appraisal simply failed to properly appraise the Property

24 eventually leading to an inaccurate loan and a financial detriment to Plaintiff.

25   35.   On or around August 16, 2008, Plaintiff submitted a letter to Defendant

26 Homecomings questioning why her monthly mortgage payments have skyrocketed

27 and further informing them that that the appraisal used to determine the Property's

28 appraised value was erroneous because it failed to properly calculate the Property's

SECOND AMENDED COMPLAINT

1  Homecomings fell upon death ears, sending Plaintiff into a spiral of deep
2  depression and the fear of losing her home.
3     40.   On or around February 26, 2009, Defendant Homecoming caused to be
4  recorded a Notice of Default, placing Plaintiff's home into foreclosure (the
5  "NOD"). The filing of the NOD caused Plaintiff to enter into deeper depression for
6  the fear that she would be losing a home that had been in her family for over 50
7  years to no fault of her own.
8     41.   On or around June 3, 2009, Defendant Homecomings caused to be recorded
9  a Notice of Trustee Sale (the "Trustee Sale") scheduled for June 26, 2009.
10     42.   At that very point Plaintiff began to seriously consider suicide. With no
11  money to save her home and petrified by fear of losing her with her family living
12  on the streets due to the negligence of a careless and defiant lender and servicer
13  who intentionally refused to acknowledge its mistakes had become too much for
14  her to bare.
15     43.   On or around June 9, 2009, Plaintiff received notice from Defendant
16  GMACM that their loan had transferred service from "their affiliate" Defendant
17  Homecomings, to themselves.
18     44.   With little else to turn to Plaintiff retained the Parsa Law Firm roughly in the
19  amount of $4,000 in an attempt to negotiate a loan workout on her behalf in order
20  to save her home. Although the sale date was postponed Plaintiff's counsel could
21  do little more than attain three months forbearance at a monthly amount $1837.47
22  while Defendant GMACM continued to review Plaintiff's file.
23     45.   When Plaintiff did not receive results from the Parsa Law Firm, Plaintiff
24  then hired the Consumer Advocate Law Group at an hourly rate of $350 to attempt
25  to work out her loan with Defendant GMACM.
26     46.   The loan workout process involves the homeowner filling out forms and
27  providing financial documents to the lender or servicer in order to evaluate the
28  borrower's financial position, assess why the borrower is or soon will be behind in

<center>10</center>

<center>**SECOND AMENDED COMPLAINT**</center>

1   his/her payments, and determine whether the borrower and lender would benefit
2   from adjusting the terms of the loan to an affordable level. The process is not
3   unlike the process of applying for a home loan during the purchase or refinancing
4   of a home.

5   47.   Plaintiff compiled all the paperwork requested from Defendant GMACM to
6   proceed with the loan modification process. However, GMACM forced Plaintiff
7   and her counsel to repeatedly resubmit the same paperwork over and over again
8   since October of 2009 when Plaintiff's current counsel first submitted her loan
9   modification application on her behalf.

10   48.   In February of 2010, Plaintiff was denied a loan modification by Defendant
11   GMACM purportedly because Plaintiff did not submit enough information
12   although this was completely untrue, as Plaintiff's counsel often argued with
13   incompetent representatives and negotiators, who themselves were not properly
14   trained, and could not determine exactly what documentation was needed to
15   complete the modification. In addition, Plaintiff was informed she did not qualify
16   for a loan modification because her outstanding loan balance was too high.

17   49.   Plaintiff made several good faith payments of $1837.47 awaiting a decision
18   for modification, all the while Defendant GMACM had no intention of ever
19   modifying the loan.

20   50.   Plaintiff's counsel resubmitted her loan modification application in February
21   of 2010.

22   51.   In May of 2010, Plaintiff was again denied by Defendant GMACM stating
23   that Plaintiff had insufficient income for a loan modification despite the fact that
24   this was untrue. Furthermore, Defendant GMACM disregarded Plaintiff's
25   husband's income despite many attempts to provide them with all required
26   documentation, from a profit and loss sheet to check stubs and bank records.

27   52.   Upon being denied for a modification Defendant GMACM, scheduled a new
28   sale date for June 28, 2010. Plaintiff again retained the Consumer Advocate Law

**SECOND AMENDED COMPLAINT**

1  Group at a rate of $350 per hour, to review her loan based upon her issues,
2  questions and concerns regarding Plaintiff's mortgage.
3  53.   At this point in time it was discovered that since October of 2007 Defendant
4  Homecomings had been over escrowing Plaintiff for erroneous tax payments of an
5  average amount of over $5,000 annually, as evidenced by a copy of an escrow
6  statement produced by Defendant Homecomings herein incorporated as <u>Exhibit I</u>.
7  This shocking discovery highlighted the fact that Defendant Homecomings was
8  either negligently forcing Plaintiff to bear the burden of another owner's tax
9  responsibilities due to their egregious error or Plaintiff's funds were being
10  converted by Defendant Homecomings.
11  54.   However, it is abundantly clear that each Defendant either failed to exercise
12  reasonable care to Plaintiff or breached a contractual duty owed to Plaintiff by
13  failing to provide an accurate appraisal report, failing to properly manage an
14  escrow account and/or failing to properly review Plaintiff's loan for a potential
15  workout. The Defendants' reckless disregard to the harm they were causing
16  Plaintiff has left her and her family in a state of chaotic shambles and her will to
17  live was destroyed.
18  55.   On or around June 22, 2010, Plaintiff filed this Complaint in the Superior
19  Court of California.
20  56.   In or around July of 2010, Defendants GMACM and Homecomings
21  petitioned for removal of this Action to the United States District Central District,
22  which was thereafter granted by the Court.

23                      **FIRST CAUSE OF ACTION**
24                          **(NEGLIGENCE)**
25  57.   Plaintiff incorporates by reference all the foregoing allegations as if fully set
26  forth herein.
27  58.   This is a claim for negligence against Defendant Sterling Appraisal.
28  59.   Plaintiff applied for a refinance with Defendant Homecomings to

1 | consolidate two previous mortgages and to utilize some of the Property's existing
2 | equity in order to complete a variety of home improvements being made to the
3 | Property, including the Project. In order to obtain a refinance from Defendant
4 | Homecomings, the lender required that Plaintiff have the Property appraised by a
5 | certified appraisal company of Homecoming's choosing.

6 | 60.   Defendant Sterling Appraisal owed a duty to Plaintiff to exercise reasonable
7 | care in determining the fair market value of the Property, as that information would
8 | be relied upon by both Plaintiff and Homecomings in determining accurate figures
9 | for a potential refinance. Such duties included applying accurate figures and data in
10 | determining the Property's value. In addition, Sterling Appraisal's duty also
11 | included reasonable due diligence in determining whether or not an improvement
12 | made to the Property was permitted or not.

13 | 61.   Defendant Sterling Appraisal breached its duty to reasonably and properly
14 | appraise the Property, by failing to engage in reasonable due diligence to determine
15 | whether or not the garage conversion had in fact received the proper permits from
16 | the City of Los Angeles. Had, Defendant Sterling Appraisal conducted reasonable
17 | due diligence it would have discovered that the additional 570 sq ft listed as a
18 | garage should in fact have been calculated as livable space adding an additional
19 | $42,750 of value to the Property for a total appraised value of $566,950.00 and an
20 | LTV of 78%.  Thus Plaintiff would have been under the 80% threshold for forced
21 | PMI.

22 | 62.   The Defendant Sterling Appraisal knew or should have known that the
23 | appraised value of the Property identified in its Appraisal Report was erroneous.

24 | 63.   As a direct and proximate result of said negligence, Plaintiff has been
25 | damaged by a monthly PMI payment that Plaintiff should never have been required
26 | pay due to Sterling Appraisal's negligence, which greatly contributed to Plaintiff's
27 | Property going into foreclosure, forcing Plaintiff to expend thousands of dollars
28 | she did not have in order to save her home, ruining her credit and causing plaintiff

1  severe emotional distress to the point of near suicide. The precise amount of these

2  damages is not presently ascertainable but exceeds the sum of $100,000.00.

## SECOND CAUSE OF ACTION
### (BREACH OF CONTRACT)

5  64.     Plaintiff incorporates by reference all the foregoing allegations as if

6  fully set forth herein.

7  65.     This is a claim for breach of contract against Defendant Servicers.

8  66.     Plaintiff and Defendant Homecomings entered into the Impound

9  Authorization and a Deed of Trust, where Defendant Homecomings, and later

10  Defendant GMACM who by assignment also assumed liabilities of the previous

11  servicer of this mortgage, was to manage an escrow impound account on behalf of

12  Plaintiff in order to ensure Plaintiff would have the requisite funds to make tax,

13  insurance and other payments.

14  67.     Section 3 ¶ 2 of the Deed of Trust states:

15  'Lender may, at any time, collect and hold Funds in an amount (a)

16  sufficient to permit Lender to apply the Funds at the time specified

17  under RESPA, and (b) not to exceed the maximum amount a lender

18  can require under RESPA. Lender shall estimate the amount of funds

19  due on the basis of current data and reasonable estimates of

20  expenditures of future Escrow Items or otherwise in accordance with

21  Applicable Law.'

22  68.     The Plaintiffs have fully performed its obligations and duties under

23  the Escrow Agreement by making timely payments.

24  69.     However, by August of 2007, Plaintiff's escrow payments

25  unexpectedly and without reason or notice, increased an alarming $1,035.18. By

26  July 2008, Plaintiff was financially unable to continue the payments on with this

27  erroneous escrow payment and would eventually default on her loan.

28  70.     In June of 2010, after hiring counsel to review her mortgage

14

1  statements and other documents associated with the mortgage, it was discovered

2  that the Defendant Servicers had severely mismanaged Plaintiff's escrow account

3  and forced Plaintiff to make these increased and unaffordable escrow payments

4  due to the fact that the Defendant Servicers were erroneously paying bi-annual

5  taxes in the amount in excess of $5,000 per year for a parcel other than Plaintiff's.

6  71.    The Defendant Servicers' estimates were completely unreasonable

7  due to the fact that they incorrectly added the property tax payments of an

8  erroneous parcel to Plaintiff's overall escrow account in the amount $5,000 which

9  significantly increased Plaintiff's monthly payment, and increased the total dollar

10  amount the Defendant Servicers could request as a cushion for each year. As such,

11  it had become abundantly clear that Defendants were in material breach of Section

12  3 ¶ 2 of the Deed of Trust due to the fact that they were unable to properly manage

13  the escrow account.

14  72.    As a result of the above described material breach by Defendant

15  Servicers, Plaintiff paid significantly more than necessary for her mortgage, would

16  eventually default on the loan, amassed large legal bills and costs due to the

17  Property being in foreclosure, Plaintiff's credit history has been destroyed and

18  other consequential damages to be determined at trial. The precise amount of these

19  damages is not presently ascertainable but exceeds the sum of $100,000.

20  **THIRD CAUSE OF ACTION**

21  **(BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING)**

22  73.    Plaintiff incorporates by reference all the foregoing allegations as if

23  fully set forth herein.

24  74.    This is a claim for breach of covenant of good faith and fair dealing

25  against Defendant Servicers.

26  75.    Defendant Servicers engaged in the above-described conduct in

27  breach of the implied covenant of good faith and fair dealing owed to Plaintiff.

28  76.    In every contract there is an implied covenant of good faith and fair

15

**SECOND AMENDED COMPLAINT**

1    dealing by each party not to do anything that will deprive the other parties of the

2    benefits of the contract, and a breach of this covenant by failure to deal fairly or in

3    good faith gives rise to an action for damages.

4      77.     As alleged above, Plaintiff entered into a contractual relationship with

5    Defendant Homecomings through the Deed Trust. Plaintiff agreed to make

6    monthly mortgage payments and establish and escrow account with Defendant

7    Homecomings in exchange for the refinance of the Property and management of

8    Plaintiff's tax and insurance payments.

9      78.     Plaintiff has fully performed on her obligations and conditions under

10    the terms of the original Deed of Trust having made timely payments on her

11    mortgage up and until Defendant Homecomings erroneously increased Plaintiff's

12    monthly escrow payments in excess of $1,000.

13      79.     In or around August of 2008, Plaintiff gave notice to Defendant

14    Homecomings that she believed that it had caused an error in managing her escrow

15    account. However, despite these notices Defendant Servicers intentionally

16    disregarded its obligation to cure its breach of the Deed of Trust and continued to

17    pursue a foreclosure action.

18      80.     Because Plaintiff has satisfied all requisite conditions of the Deed of

19    Trust, Defendant Servicers owed not only the express duty to properly manage

20    Plaintiff's mortgage and escrow payments, but Defendant Servicers also owed a

21    duty to act fairly and in good faith in remedying its errors upon discovery of them.

22      81.     Plaintiff believes, and thereon alleges, that Defendant Homecomings

23    has unreasonably and without proper cause interfered with the Plaintiffs' rights to

24    receive an accurate mortgage and escrow payment by unjustifiably failing to

25    remedy its errors despite the fact that it was fully aware errors had been made.

26      82.     As a direct and proximate result of said negligence, Plaintiff has been

27    damaged by paying for PMI that should never have been required, being

28    overcharged escrow payments due to Defendants' negligence and breach of

1    contract, placing Plaintiff's Property into foreclosure, forcing Plaintiff to expend

2    thousands of dollars she did not have in order to save her home, ruining her credit

3    and causing plaintiff severe emotional distress to the point of near suicide. The

4    precise amount of these damages is not presently ascertainable but exceeds the sum

5    of $100,000.00.

### FOURTH CAUSE OF ACTION

### (STATE UNLAWFUL AND UNFAIR BUSINESS PRACTICES)

### (Cal. Bus. & Prof. Code sections 17200, *et seq.*)

9    83.    Plaintiff incorporates by reference all the foregoing allegations as if

10   fully set forth herein.

11   84.    This is a claim for negligence against Defendants Homecomings,

12   GMACM and Sterling Appraisal.

13   85.    Plaintiff is informed and believes and alleges thereon that Defendants

14   have conducted their business by way of unlawful, unfair and fraudulent business

15   practices and violated California Law, as set forth above.

16   86.    Plaintiff is further informed and believes and thereon alleges that

17   Defendants' unlawful, unfair and fraudulent business practices are likely to

18   deceive the public and are likely to continue to induce members of the public into

19   relying to their detriment on statements and agreements made by Defendants.

20   87.    Defendant Servicers acts violate the unfair competition laws of the

21   State of California and specifically California Business and Professions Code

22   sections 17200, *et seq.*

23   88.    California's Unfair Competition Law provides a private right of action

24   to any person who has suffered injury in fact and has lost money or property as a

25   result of unfair competition.

26   89.    Defendants' conduct as mentioned above amounts to unfair conduct

27   as Defendants' became aware that a variety of mistakes were made on their behalf

28   for the consummation and service of Plaintiff's loan yet intentionally disregarded

17

1  these errors without fear of consequence. Defendants' have a pattern of behavior

2  of disregarding their negligent acts based upon the many legal actions taken

3  against them by a myriad of private individuals and several states' attorney

4  generals.

5      90.      As a result of the aforementioned facts, Plaintiff has suffered actual

6  loss and damages as a result of Defendants' unlawful, unfair and fraudulent

7  business practices such as the overpayments of escrow and unnecessary PMI, as

8  well as, the costs associated with attempting to remedy the matter and save her

9  home, and Plaintiff is informed and believes and thereon alleges that Defendants

10  have profited by its wrongful conduct in an amount to be proven at trial.

11      91.      Pursuant to California Business and Professions Code Section 17203,

12  Plaintiff is entitled to injunctive relief in the form of stopping the pending

13  foreclosure, which has resulted from Defendants' unlawful, unfair and fraudulent

14  business practices.

15      **WHEREFORE**, Plaintiff prays for judgment against Defendants and $each of

16  them as follows:

17      1.      For injunctive relief, pursuant to California Code of Civil Procedure

18  section 525, et al. Business and Professions Code section 17203, including but not

19  limited to a permanent injunction of any current or future foreclosure proceeding

20  against the Property;

21      2.      For actual damages against all Defendants according to proof at trial;

22      3.      For consequential damages against all Defendants according to proof

23  at trial;

24      4.      For compensatory damages and emotional distress damages according

25  to proof at trial against Sterling Appraisal;

26      5.      For attorneys fees;

27      6.      For costs of suit incurred herein;

28      7.      For prejudgment and post-judgment interest in accordance with law;

18

SECOND AMENDED COMPLAINT

1    and,

2      8.      For such other and further relief this Court may deem just and proper.

3

4    DATED: November 4, 2010

5                          **THE CONSUMER ADVOCATE LAW**

6                          **GROUP, P.C.**

7

8

9                          James A. Bryant II

10                          Attorney for the Plaintiff

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<div align="center">19</div>

1

## DEMAND FOR JURY

2    Plaintiff herein demands trial by jury in the above captioned matter.

3

4    DATED: November 4, 2010

5                                    **THE CONSUMER ADVOCATE LAW**

6                                    **GROUP, P.C.**

7

8    _____

9    James A. Bryant II
     Attorney for the Plaintiff

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**SECOND AMENDED COMPLAINT**

EXHIBIT A

LEGAL DESCRIPTION

ALL THAT PARCEL OF LAND IN COUNTY OF LOS ANGELES, STATE OF CALIFORNIA AS MORE FULLY DESCRIBED IN DOCUMENT 06-0761440 AND BEING MORE PARTICULARLY DESCRIBED AS FOLLOWS:

LOT 11 OF THE PETER TAYLOR TRACT, IN THE CITY OF LOS ANGELES, COUNTY OF LOS ANGELES, STATE OF CALIFORNIA, AS PER MAP RECORDED IN BOOK 11, PAGE 199 OF MAPS, IN THE OFFICE OF THE COUNTY RECORDER OF SAID COUNTY.

HOMESTEAD DECLARATION FOR ANTOINETTE MARIE BROOKS RECORDED 4/15/99 AT DOCUMENT 99-0651459.

APN: 5036-001-014

EXHIBIT B

3791 S Normandie

06016 - 70000 - 11795

Permit #:

Plan Check #: B08SL01893

Event Code:

LA Department of Building and Safety
SL 15 04 098215 06/20/06 10:00AM

ding and Safety

Mg-Alter/Repair
2 Family Dwelling
Plan Check at Counter
Plan Check

| BUILDING PERMIT-RES | $130.00 |
| EI RESIDENTIAL | $0.50 |
| ELECTRICAL PERMIT RES | $16.90 |
| ONE STOP SURCH | $2.95 |
| SYSTEMS DEVT FEE | $8.84 |
| MISCELLANEOUS | $5.00 |
| CITY PLANNING SURCH | $7.80 |

NG PERMIT
CUPANCY

Last Status: Ready to Issue
Status Date: 06/20/2006

1. TRACT
PETER TAYLOR TRACT

Total Due: $171.99
Check: $171.99

06SL 44678

| BINTY MAP REF # | PARCEL ID (PIN #) | 2. ASSESSOR PARCEL # |
| B 11-199 | 117B193 745 | 5036 - 001 - 014 |

3. PARCEL INFORMATION
Area Planning Commission – So
LADBS Branch Office – LA
Council District – 8
Certified Neighborhood Council –
Community Plan Area – South Los Angeles

Lot Cut Date - 11/18/1922

Near Source Zone Distance - 4.5
Thomas Brothers Map Grid - 673-J1
Thomas Brothers Map Grid - 673-J2

ZONE(S): RD1.5-1 /

4. DOCUMENTS
ZI - ZI-2344 Auto-Related/JunkYard/Op
YC - YV-4788
SPA - South Los Angeles Alcohol Sales
ORD - ORD-162123

ORD - ORD-167121-SA1722
ORD - ORD-171682
ICO - Auto-Related/JunkYard/OpenStor.
CPC - CPC-1983-506-SP

CPC - CPC-1986-447-GPC
CPC - CPC-1986-603-GPC
CDBG - LARZ-Central City

5. CHECKLIST ITEMS
Combine Elec – Wrk. per 91.107.2.1.1.1

6. PROPERTY OWNER, TENANT, APPLICANT INFORMATION
Owner(s):
Brooks, Antoinette M          3791 Normandie Ave          LOS ANGELES CA 90007          3237320762

Tenant:
Applicant:   (Relationship: Agent for Owner)
Okey  Okonkwo -

(323) 291-5755

7. EXISTING USE                    PROPOSED USE
(01) Dwelling - Single Family    (01) Dwelling - Single Family
(07) Garage - Private

8. DESCRIPTION OF WORK
Proposed to convert (e) att. garage into a den.

9. # Bldgs on Site & Use: 2;

For information and/or inspection requests originating within LA County,
**Call toll-free (888) LA4BUILD** (524-2845)
Outside LA County, call (213) 482-0000 or visit www.ladbs.org

10. APPLICATION PROCESSING INFORMATION
BLDG. PC By:  Eduardo Rodriguez        DAS PC By:
OK for Cashier:  Veronica Lopez        Coord. OK:

Signature:                              Date:

For Cashier's Use Only
W/O #: 61611795

11. PROJECT VALUATION & FEE INFORMATION   Final Fee Period
Permit Valuation:  $1,500        PC Valuation:

| FINAL TOTAL Bldg-Alter/Repair | 171.99 |
| Permit Fee Subtotal Bldg-Alter/Repa | 130.00 |
| Electrical | 16.90 |
| Plan Check Subtotal Bldg-Alter/Rep | 0.00 |
| Fire Hydrant Refuse-To-Pay | |
| E.O. Instrumentation | 0.50 |
| O.S. Surcharge | 2.95 |
| Sys. Surcharge | 8.84 |
| Planning Surcharge | 7.80 |
| Planning Surcharge Misc Fee | 5.00 |
| Permit Issuing Fee | 0.00 |

Sewer Cap ID:                    Total Bond(s) Due:

12. ATTACHMENTS
Plot Plan

* P 0 6 0 1 6 7 0 0 0 0 1 1 7 9 5 F N *

EXHIBIT C

**City of Los Angeles - Department of Building and Safety**
## APPLICATION FOR BUILDING PERMIT
## AND CERTIFICATE OF OCCUPANCY

Bldg-Alter/Repair
'r 2 Family Dwelling
.in Check at Counter
Plan Check

Last Status: Ready to Issue
Status Date: 11/21/2006

**1. TRACT** — PETER TAYLOR TRACT   **BLOCK**   **LOT(s)** 11   **ARB** 2   **COUNTY MAP REF #** M B 11-199   **PARCEL ID # (PIN #)** 117B193 745   **2. ASSESSOR PARCEL #** 5036-001-014

**3. PARCEL INFORMATION**
Area Planning Commission - South Los Angeles
LADBS Branch Office - LA
Council District - 8
Certified Neighborhood Council - Empowerment Congre
Community Plan Area - South Los Angeles
ZONE(S): RD1.5-1

Census Tract - 2313.00
District Map - 117B193
Energy Zone - 8
Earthquake-Induced Liquefaction Area - Yes
Lot Cut Date - 11/18/1922

Lot Size - 50' X 50'
Lot Type - Corner
Near Source Zone Distance - 4.5
Thomas Brothers Map Grid - 673-J1
Thomas Brothers Map Grid - 673-J2

**4. DOCUMENTS**
Z1 - ZI-2344 Auto-Related/JunkYard/Op   ORD - ORD-167121-SA1722   CPC - CPC-1986-447-GPC
YC - YV-4788   ORD - ORD-171682   CPC - CPC-1986-603-GPC
SPA - South Los Angeles Alcohol Sales   ICO - Auto-Related/JunkYard/OpenStor   CDBG - LARZ-Central City
ORD - ORD-162128   CPC - CPC-1983-506-SP

**5. CHECKLIST ITEMS**
Combine Elec - Wrk. per 91.107.2.1.1.1
Combine HVAC - Wrk. per 91.107.2.1.1.1
Combine Plumbg - Wrk. per 91.107.2.1.1.1

**6. PROPERTY OWNER, TENANT, APPLICANT INFORMATION**
Owner(s): Brooks, Antoinette M   3791 Normandie Ave   LOS ANGELES CA 90007   3237320762
Tenant:
Applicant: (Relationship: Agent for Owner)
Okey Okonkwo -   (323) 291-5755

**7. EXISTING USE**   **PROPOSED USE**
(01) Dwelling - Single Family

**8. DESCRIPTION OF WORK**
Addition of a new bathroom in the proposed den that is converted from garage. Supplemental
to 06016-70000-11795.

**9. # Bldgs on Site & Use:** 2: SINGLE FAMILY DWELLING AND 1-CAR STALL

**10. APPLICATION PROCESSING INFORMATION**
BLDG. PC By:   DAS PC By:
OK for Cashier: Patrick Kong   Coord. OK:
Signature:   Date:

For information and/or inspection requests originating within LA County,
**Call toll-free (888) LA4BUILD** (524-2845)
Outside LA County, call (213) 482-0000 or visit www.ladbs.org
For Cashier's Use Only   W/O #: 61611795

**11. PROJECT VALUATION & FEE INFORMATION** Final Fee Period
Permit Valuation: $4,000   PC Valuation:

FINAL TOTAL Bldg-Alter/Repair   246.08
Permit Fee Subtotal Bldg-Alter/Reba   130.00
Plan Check Subtotal Bldg-Alter/Rep   81.00
Fire Hydrant Refuse-To-Pay
E.O. Instrumentation   0.50
O.S. Surcharge   4.23
Sys. Surcharge   12.69
Planning Surcharge   12.66
Planning Surcharge Misc Fee   5.00
Permit Issuing Fee   0.00

Sewer Cap ID:   Total Bond(s) Due:
**12. ATTACHMENTS**

* P 0 6 0 1 6 7 0 0 0 1 1 7 9 5 F N *

# EXHIBIT D

## Uniform Residential Appraisal Report

File # BOB7174

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | | | |
|---|---|---|---|
| Property Address 3791 S NORMANDIE AVENUE | City LOS ANGELES | State CA | Zip Code 90007 |
| Borrower BROOKS | Owner of Public Record BROOKS | County LOS ANGELES | |

| | |
|---|---|
| Legal Description PETER TAYLOR TRACT N 50 FT OF W 50 FT LOT 11 | |
| Assessor's Parcel # 5036-001-014 | Tax Year 2005 | R.E. Taxes $ 1,716.48 |
| Neighborhood Name N/A | Map Reference 673/J1 | Census Tract 2313.00 |

Occupant [X] Owner [ ] Tenant [ ] Vacant  Special Assessments $ N/A  [ ] PUD  HOA $ N/A  [ ] per year [ ] per month

Property Rights Appraised [X] Fee Simple [ ] Leasehold [ ] Other (describe)

Assignment Type [ ] Purchase Transaction [X] Refinance Transaction [ ] Other (describe)

Lender/Client HOMECOMINGS FINANCIAL  Address 4500 CHERRY CREEK DRIVE SOUTH, SUITE 200 GLENDALE, CO 80246

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal? [ ] Yes [X] No

Report data source(s) used, offering price(s), and date(s). MLS/NDC/OWNER.

I [ ] did [ ] did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.
N/A

Contract Price $ N/A  Date of Contract N/A  Is the property seller the owner of public record? [ ] Yes [ ] No  Data Source(s) N/A

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower? [ ] Yes [X] No

If Yes, report the total dollar amount and describe the items to be paid. $ N/A  N/A

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | | | Present Housing Trends | | | One-Unit Housing | | Present Land Use % |
|---|---|---|---|---|---|---|---|---|
| Location [X] Urban [X] Suburban [ ] Rural | Property Values [ ] Increasing [X] Stable [ ] Declining | PRICE $(000) | AGE (yrs) | One-Unit 90 % |
| Built-Up [X] Over 75% [ ] 25-75% [ ] Under 25% | Demand/Supply [ ] Shortage [X] In Balance [ ] Over Supply | $(000) | | 2-4 Unit 2 % |
| Growth [ ] Rapid [X] Stable [ ] Slow | Marketing Time [ ] Under 3 mths [X] 3-6 mths [ ] Over 6 mths | 350 Low | NEW | Multi-Family 2 % |
| | | | 605 High | 101 | Commercial 6 % |
| Neighborhood Boundaries See Attached Addendum | | | 530 Pred. | 97 | Other % |

Neighborhood Description  See Attached Addendum

Market Conditions (including support for the above conclusions)  See Attached Addendum

| | | | |
|---|---|---|---|
| Dimensions .05 OF AN ACRE | Area 2260 Sq.Ft. | Shape RECTANGULAR | View NONE |
| Specific Zoning Classification LARD1.5 | Zoning Description RESIDENTIAL | | |

Zoning Compliance [X] Legal [ ] Legal Nonconforming (Grandfathered Use) [ ] No Zoning [ ] Illegal (describe)

Is the highest and best use of the subject property as improved (or as proposed per plans and specifications) the present use? [X] Yes [ ] No  If No, describe.

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements—Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | [X] | | Water | [X] | | Street ASPHALT | [X] | |
| Gas | [X] | | Sanitary Sewer | [X] | | Alley SIDE | [X] | |

FEMA Special Flood Hazard Area [ ] Yes [X] No  FEMA Flood Zone B  FEMA Map # 060137 / 0080 D  FEMA Map Date 02/04/1987

Are the utilities and off-site improvements typical for the market area? [X] Yes [ ] No  If No, describe.

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)? [ ] Yes [X] No  If Yes, describe.  THERE ARE NO ADVERSE SITE CONDITIONS OR EXTERNAL FACTORS.

| GENERAL DESCRIPTION | FOUNDATION | EXTERIOR DESCRIPTION materials/condition | INTERIOR materials/condition |
|---|---|---|---|
| Units [X] One [ ] One with Accessory Unit | [ ] Concrete Slab [X] Crawl Space | Foundation Walls CONCRETE /AVG | Floors TILE/WD/LAM/A |
| # of Stories 1 | [ ] Full Basement [ ] Partial Basement | Exterior Walls STUCCO/AVG | Walls PLASTER/AVG |
| Type [X] Det. [ ] Att. [ ] S-Det./End Unit | Basement Area NONE sq. ft. | Roof Surface COMP/AVG | Trim/Finish WD/PAINT/AVG |
| [X] Existing [ ] Proposed [ ] Under Const. | Basement Finish N/A % | Gutters & Downspouts NONE/AVG | Bath Floor TILE/AVG |
| Design (Style) TRADITIONAL | [ ] Outside Entry/Exit [ ] Sump Pump | Window Type DUAL PANE /AVG | Bath Wainscot TILE/AVG |
| Year Built 1908 | Evidence of [ ] Infestation | Storm Sash/Insulated NONE | Car Storage [ ] None |
| Effective Age (Yrs) 30 YEARS | [ ] Dampness [ ] Settlement | Screens SCREENS / AVG | [X] Driveway # of Cars |
| Attic [ ] None | Heating [ ] FWA [X] HWBB [ ] Radiant | Amenities | Driveway Surface CONCRETE |
| [ ] Drop Stair [ ] Stairs | [X] Other FAU  Fuel GAS | [ ] WoodStove(s) # | [X] Garage # of Cars 2 |
| [ ] Floor [X] Scuttle | Cooling [X] Central Air Conditioning | [ ] Fireplace(s) # [X] Fence | [ ] Carport # of Cars |
| [ ] Finished [ ] Heated | [ ] Individual [ ] Other | [X] Patio/Deck PATIO [ ] Porch | [X] Att. [ ] Det. [ ] Built-in |
| Appliances [ ] Refrigerator [X] Range/Oven [X] Dishwasher [X] Disposal [ ] Microwave [ ] Washer/Dryer [ ] Other (describe) | | [ ] Pool [ ] Other (describe) | |
| Finished area above grade contains: 4 Rooms  2 Bedrooms  1 Bath(s)  1,151 Square Feet of Gross Living Area Above Grade | | | |

Additional features (special energy efficient items, etc.)  See Attached Addendum

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.)  See Attached Addendum

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property? [ ] Yes [X] No  If Yes, describe.

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)? [X] Yes [ ] No  If No, describe.  PROPERTY GENERALLY CONFORMS TO THE NEIGHBORHOOD.

## Uniform Residential Appraisal Report

135330
Fax No. 80071146

| FEATURE | SUBJECT | COMPARABLE SALE NO. 1 | | COMPARABLE SALE NO. 2 | | COMPARABLE SALE NO. 3 | |
|---|---|---|---|---|---|---|---|
| There are 3 comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 539,900 to $ 579,900 | | | | | | | |
| There are 7 comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 530,000 to $ 596,000 | | | | | | | |
| Address | 3791 S NORMANDIE AVENUE LOS ANGELES | 1325 W 37TH DR LOS ANGELES | | 1355 W 35TH PL LOS ANGELES | | 1738 EXPOSITION BLVD LOS ANGELES | |
| Proximity to Subject | | 0.15 miles NE | | 0.43 miles N | | 0.65 miles W | |
| Sale Price | $ N/A | | $ 550,000 | | $ 570,000 | | $ 550,000 |
| Sale Price/Gross Liv. Area | $ 0.00 sq. ft. | $ 477.43 sq. ft. | | $ 421.29 sq. ft. | | $ 385.42 sq. ft. | |
| Data Source(s) | | NDC/MLS/DRIVE BY | | NDC/MLS/DRIVE BY | | NDC/MLS/DRIVE BY | |
| Verification Source(s) | | DOC#1328616 | | DOC#2433420 | | DOC#2245946 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment | DESCRIPTION | +(-)$ Adjustment |
| Sale or Financing | N/A | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Concessions | | 1ST TD$440,000 | | 1ST TD$456,000 | | 1ST TD$494,450 | |
| Date of Sale/Time | N/A | 08/16/2006 COE | | 11/02/2006 COE | | 10/10/2006 COE | |
| Location | INFERIOR | AVERAGE | -10,000 | AVERAGE | -10,000 | INFERIOR | |
| Leasehold/Fee Simple | FEE SIMPLE | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 2250 Sq.Ft. | 6621 | -13,113 | 2508 | | 5400 | -9,450 |
| View | NONE | NONE | | NONE | | NONE | |
| Design (Style) | TRADITIONAL | TRADITIONAL | | TRADITIONAL | | TRADITIONAL | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 96+/- years | 86 YEARS | -1,200 | 98 YEARS | | 77 YEARS | -2,100 |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Above Grade | Total Bdrms Baths | Total Bdrms Baths | -4,000 | Total Bdrms Baths | -4,000 | Total Bdrms Baths | +4,000 |
| Room Count | 4 2 2 | 5 3 1 | +4,000 | 5 3 2 | | 4 2 1 | |
| Gross Living Area 35.00 | 1,151 sq. ft. | 1,152 sq. ft. | 0 | 1,353 sq. ft. | -7,070 | 1,427 sq. ft. | -9,660 |
| Basement & Finished | NONE NOTED | NONE NOTED | | NONE NOTED | | NONE NOTED | |
| Rooms Below Grade | Unfinished | N/A | | N/A | | N/A | |
| Functional Utility | INFERIOR | AVERAGE | -2,000 | AVERAGE | -2,000 | AVERAGE | -2,000 |
| Heating/Cooling | FAU/CAU | SIMILAR | | SIMILAR | | WALL | +4,000 |
| Energy Efficient Items | TYPICAL | TYPICAL | | TYPICAL | | TYPICAL | |
| Garage/Carport | 2 CAR GARAGE | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GARAGE | |
| Porch/Patio/Deck | PATIO | SIMILAR | | SIMILAR | | SIMILAR | |
| Net Adjustment (Total) | | + X - | $ 26,313 | + X - | $ 23,070 | + X - | $ 15,210 |
| Adjusted Sale Price of Comparables | | Net Adj. -4.8% Gross Adj. 6.2% | $ 523,687 | Net Adj. -4.0% Gross Adj. 4.0% | $ 546,930 | Net Adj. -2.8% Gross Adj. 5.7% | $ 534,790 |

☑ I did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☑ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data source(s) NDC DATA / MLS

My research ☐ did ☑ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data source(s) NDC DATA / MLS

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE NO. 1 | COMPARABLE SALE NO. 2 | COMPARABLE SALE NO. 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE WITHIN PAST 36 MONTHS | 06/02/2004 | 10/04/2005 | NONE WITHIN PAST 36 MONTHS |
| Price of Prior Sale/Transfer | | $295,000 | $515,000 | |
| Data Source(s) | NDC/MLS | NDC/MLS | NDC/MLS | NDC/MLS |
| Effective Date of Data Source(s) | 12/12/2006 | 12/12/2006 | 12/12/2006 | 12/12/2006 |

Analysis of prior sale or transfer history of the subject property and comparable sales PLEASE SEE ABOVE FOR PRIOR TRANSACTIONS. OTHER THAN NOTED, THE SUBJECT HAS NOT SOLD OR TRANSFERRED IN THE PAST 36 MONTHS OR BEEN LISTED IN THE PAST 12 MONTHS.

Summary of Sales Comparison Approach SUBJECT AND ALL COMPARABLES ARE LOCATED WITHIN THE SAME MARKET AREA. ALL COMPARABLES ARE GIVEN EQUAL CONSIDERATION IN FINAL RECONCILIATION OF ESTIMATED VALUE. ADJUSTED AT $3 PER SQ. FT. FOR SITE. ADJUSTED AT $100 PER YEAR FOR AGE. ADJUSTED AT $4000 FOR EACH FULL BEDROOM AND EACH FULL BATHROOM. ADJUSTED AT $35 PER SQ. FT. FOR GLA. SUBJECT AND COMP #3 ARE LOCATED ON A TRAFFIC STREET AND NOTED FOR BEING INFERIOR IN LOCATION. SUBJECT HAS A NON PERMITTED GARAGE CONVERSION - COST TO CURE AT $2,000.

Indicated Value by Sales Comparison Approach $ 523,000

Indicated Value by: Sales Comparison Approach $ 523,000 Cost Approach (if developed) $ 524,200 Income Approach (if developed) $ 0
SUBJECT AND ALL COMPARABLES ARE LOCATED WITHIN THE SAME MARKET AREA. ALL COMPARABLES ARE GIVEN EQUAL CONSIDERATION IN FINAL RECONCILIATION OF ESTIMATED VALUE.

This appraisal is made ☑ "as is," ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair:

Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is $ 523,000
as of 12/12/2006, which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005 Produced using ACI software, 800.234.8727 www.aciweb.com Page 2 of 6 Fannie Mae Form 1004 March 2005 1004_05 05/2005

LSI, A Fidelity National Financial Company

# Uniform Residential Appraisal Report

File No. 80071146

**CLARIFICATION OF INTENDED USE AND INTENDED USER:**

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER.

## COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.

Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value) THE SITE VALUE WAS DETERMINED THROUGH ABSTRACTION DUE TO THE LACK OF VACANT LAND SALES WITHIN THE SUBJECTS MARKET AREA.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | = $ | 435,000 |
|---|---|---|---|
| Source of cost data BUILDING - COST NET | Dwelling 1,151 Sq. Ft. @ $ 100.00 | = $ | 115,100 |
| Quality rating from cost service GOOD   Effective date of cost data 10/01/2005 | Sq. Ft. @ $ | = $ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | Garage/Carport 570 Sq. Ft. @ $ 25.00 | = $ | 14,250 |
| LAND VALUE BY ABSTRACTION. LAND TO IMPROVEMENT | Total Estimate of Cost New | = $ | 129,350 |
| RATIO TYPICAL FOR THE AREA. MARSHALL & SWIFT COST | Less 70 Physical Functional External | | |
| HANDBOOK USED FOR COST APPROACH FIGURES. AGE / | Depreciation $53,146 $2,000 $10,000 | = $( | 65,146) |
| LIFE METHOD USED FOR PHYSICAL DEPRECIATION. | Depreciated Cost of Improvements | = $ | 64,204 |
| ESTIMATED REMAINING LIFE IS 40 YEARS. | "As-is" Value of Site Improvements | = $ | 26,000 |
| Estimated Remaining Economic Life (HUD and VA only) 40 Years | INDICATED VALUE BY COST APPROACH | = $ | 524,200 |

## INCOME APPROACH TO VALUE (not required by Fannie Mae)

Estimated Monthly Market Rent $ N/A X Gross Rent Multiplier N/A = $ 0 Indicated Value by Income Approach

Summary of Income Approach (including support for market rent and GRM) THE INCOME APPROACH IS LESS APPLICABLE DUE TO THE LACK OF RENTAL DATA.

## PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)? ☐ Yes ☐ No   Unit type(s) ☐ Detached ☐ Attached

Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.

Legal name of project

| Total number of phases | Total number of units | Total number of units sold |
|---|---|---|
| Total number of units rented | Total number of units for sale | Data source(s) |

Was the project created by the conversion of an existing building(s) into a PUD? ☐ Yes ☐ No   If Yes, date of conversion

Does the project contain any multi-dwelling units? ☐ Yes ☐ No   Data source(s)

Are the units, common elements, and recreation facilities complete? ☐ Yes ☐ No   If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association? ☐ Yes ☐ No   If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.



## Uniform Residential Appraisal Report

File No. 80071146

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U.S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing this appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.



ADDENDUM

File No. 80071146

THE INTENDED USER OF THIS APPRAISAL REPORT IS THE LENDER/CLIENT. THE INTENDED USE IS TO EVALUATE
THE PROPERTY THAT IS THE SUBJECT OF THIS APPRAISAL FOR A MORTGAGE FINANCE TRANSACTION, SUBJECT
TO THE STATED SCOPE OF WORK, PURPOSE OF THE APPRAISAL, REPORTING REQUIREMENTS OF THIS
APPRAISAL REPORT FORM, AND DEFINITION OF MARKET VALUE. NO ADDITIONAL INTENDED USERS ARE
IDENTIFIED BY THE APPRAISER.

**Neighborhood Boundaries**
THE SUBJECT AREA IS LOCATED NORTH OF VERNON AVENUE, SOUTH OF THE 10 FREEWAY, EAST OF WESTERN
AVENUE AND WEST OF THE 110 FREEWAY.

**Neighborhood Description**
SUBJECT'S NEIGHBORHOOD HAS AVERAGE ACCESS TO EMPLOYMENT AND ALL SUPPORT SERVICES (SHOPPING,
SCHOOLS, POLICE / FIRE AND RECREATION FACILITIES). AREA HAS AVERAGE EMPLOYMENT STABILITY AND
OVERALL AVERAGE APPEAL TO THE MARKETPLACE. NO SIGNIFICANT NEGATIVE FACTORS THAT AFFECT
MARKETABILITY OF THE PROPERTIES IN THE NEIGHBORHOOD WERE NOTED.

**Neighborhood Market Conditions**
SUBJECT NEIGHBORHOOD APPEARS TO HAVE STABLE MARKET VALUES AND A BALANCE IN SUPPLY/DEMAND.
MARKETING TIME FOR PROPERLY PRICED PROPERTIES APPEARS TO BE 3-6 MONTHS. SALES FINANCING IS
TYPICALLY CONVENTIONAL IN NATURE. CONCESSIONS, BUYDOWNS AND DISCOUNTS ARE NOT COMMONPLACE
IN THE AREA. CONCESSIONS ARE BEING OFFERED ON AN INDIVIDUAL BASIS.

**Additional Features**
SUBJECT HAS CENTRAL HEATING AND COOLING . SUBJECT HAS ALSO ADDED NEW DUAL PANE WINDOWS, NEW
APPLIANCES, REMODELED BATHROOM, RESURFACED KITCHEN COUNTERS AND NEW LAMINATE FLOORING.

**Condition of the Property**
SUBJECT IS IN OVERALL AVERAGE CONDITION, IS OF AVERAGE QUALITY, AND HAS AVERAGE APPEAL TO THE
MARKET. NO MAJOR REPAIRS / MODERNIZATION NECESSARY. TYPICAL PHYSICAL DEPRECIATION NOTED.
SUBJECT HAS A NON PERMITTED GARAGE CONVERSION - COST TO CURE TO RETURN TO FUNCTIONAL TWO CAR
GARAGE IS ESTIMATED AT $2,000 TO REMOVE DRYWALL AND INTERIOR FIXTURES. SUBJECT HAS SOME STUCCO
ON SECOND FLOOR THAT DOESNT MATCH BLUE PAINT OF HOME COST TO CURE IS UNDER $1,000 AND IS NOTED
FOR PURPOSE OF APPRAISAL.

SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Borrower: BROOKS | File No.: 30071746 |
| Property Address: 3791 S NORMANDIE AVENUE | Case No.: 136330 |
| City: LOS ANGELES | State: CA | Zip: 90007 |
| Lender: HOMECOMINGS FINANCIAL | |



**FRONT VIEW OF
SUBJECT PROPERTY**

Appraised Date: December 12, 2006
Appraised Value: $ 523,000



**REAR VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

| Borrower: BROOKS | | File No.: 80071146 |
|---|---|---|
| Property Address: 3791 S NORMANDIE AVENUE | | Case No.: 136330 |
| City: LOS ANGELES | State: CA | Zip: 90007 |
| Lender: HOMECOMINGS FINANCIAL | | |

BATHROOM IN CONVERTED GARAGE



CONVERTED GARAGE



CONVERTED GARAGE

| Borrower: BROOKS | | File No.: 80071146 |
|---|---|---|
| Property Address: 3791 S NORMANDIE AVENUE | | Case No.: 136330 |
| City: LOS ANGELES | State: CA | Zip: 90007 |
| Lender: HOMECOMINGS FINANCIAL | | |



CONVERTED GARAGE



REMODELED BATHROOM



KITCHEN

| Borrower: BROOKS | | File No.: 80071146 |
| Property Address: 3791 S NORMANDIE AVENUE | | Case No.: 136330 |
| City: LOS ANGELES | State: CA | Zip: 90007 |
| Lender: HOMECOMINGS FINANCIAL | | |



BATHROOM



NEW LAMINATE FLOORING



EXHIBIT E

Loan No.
Borrower:   Antoinette M Brooks

Data ID: 510

# COMMITMENT LETTER

Date:   December 27, 2006

Loan Number:   13U830

Borrower(s):   Antoinette M Brooks

Current Address:   3791 S. Normandie Ave
Los Angeles, CA  90007

Lender: HOMECOMINGS FINANCIAL, LLC F/K/A HOMECOMINGS FINANCIAL NETWORK, INC.

We are pleased to inform you that your loan application has been conditionally approved, subject to the following terms and conditions:

Terms: Interest Rate, Origination Fee, and Discount Points are locked-in.

Property Address:   3791 S. Normandie Ave
Los Angeles, CALIFORNIA  90007

| | | | | |
|---|---|---|---|---|
| Loan Amount: | 444,500.00 | Occupancy Status: | | Primary Residence |
| Sales Price/Estimated Value: | 523,000.00 | Loan Purpose: | | Refinance |
| Loan-to-Value: | 84.99 % | ☒  Conventional | | |
| Combined Loan-to-Value: | 84.990 % | | | |
| Loan Type: | Fixed | ☐  FHA | | .000 |
| Loan Term: | 360 | ☐  VA       ☐ Heloc | | N/A |
| Interest Rate: | 6.750 % | Margin: | | N/A |
| Origination Fee: | 0.000 | First Rate Change Cap: | | N/A |
| Discount Points: | 2.750 % | Periodic Rate Cap: | | N/A |
| | | Maximum Rate Cap: | | N/A |
| | | Rate Change Frequency: | | |

| | |
|---|---|
| Commitment Expiration Date: | 03/28/07 |
| Rate Lock Effective Date: | 11/28/06 |
| Rate Lock Expiration Date: | 01/26/07 |
| Estimated Close Date: | 01/03/07 |

Conditions on Page 3 must be satisfied prior to or at closing as indicated.

Based on the terms outlined above, the monthly principal and interest payment is: $ 2,883.02 .
(Excluding monthly accruals for taxes, hazard insurance or other escrows required by the Lender)

Interest Rate

If your Interest Rate, Origination Fee, and Discount Points are locked-in, your Interest Rate Lock-In Confirmation or Agreement will govern the terms of your lock-in.
If you have not locked-in, your Interest Rate, Origination Fee, and Discount Points are subject to change until your loan is locked-in. We will use the Interest Rate, Origination Fee, and Discount Points specified above for disclosure and qualification purposes only. If your loan is locked at a higher Interest Rate than listed above, you may qualify for the loan at the higher rate. You may contact the Lender to lock in your Interest Rate, Origination Fee, and Discount Points. Your lock-in must occur at least five (5) business days prior to your scheduled closing date. If you have not contacted the Lender by this date to lock-in the Interest Rate, Origination Fee, and Discount Points, the terms of your lock-in will be specified in a separate Lock-In Confirmation or Agreement that will be sent to you.

# Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower", as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when □ the income or assets of a person other than the "Borrower" (including the Borrower's spouse) will be used as a basis for loan qualification or □ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

Borrower Antoinette M Brooks          Co-Borrower

## I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied For: | □ VA  ☑ Conventional  □ Other (Explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|
| | □ FHA  □ USDA/Rural Housing Service | 12916847 | 136330 |

| Amount | Interest Rate | No. of Months | Amortization Type: | ☑ Fixed Rate  □ Other (Explain): |
|---|---|---|---|---|
| $444,800.00 | 6.7500% | 360 | | □ GPM  □ ARM (type): |

## II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state, & zip code) | No. of Units |
|---|---|
| 3791 S. Normandie Ave  Los Angeles, CA  90007 | 1 |

Legal Description of Subject Property (attach description if necessary)     Year Built
see attached exhibit "A"

| Purpose of Loan | □ Purchase  □ Construction  □ Other (explain): | Property will be: |
|---|---|---|
| | ☑ Refinance  □ Construction-Permanent | ☑ Primary Residence  □ Secondary Residence  □ Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a+b) |
|---|---|---|---|---|---|

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements  □ made  □ To be made |
|---|---|---|---|---|
| | $0.00 | $401,280.34 | Cash Out | Cost |

| Title will be held in what name(s): | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| Antoinette Marie Brooks | As Sole Owner | ☑ Fee Simple |
| Source of Down Payment, Settlement Charges and/or Subordinate Financing (Explain) | | □ Leasehold (show expiration date) |

## III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr or Sr. if applicable) | Borrower's Name (include Jr or Sr. if applicable) |
|---|---|
| Antoinette M Brooks | |

| Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (MM/DD/YYYY) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (323) 732-9767 | 4/10/1956 | 0 | | | | 0 |

| ☑ Married  □ Unmarried (include single, divorced or widowed)  □ Separated | Dependents (not listed by Co-Borrower) No. 0  Ages | □ Married  □ Unmarried (include single, divorced or widowed)  □ Separated | Dependents (not listed by Borrower) No. 0  Ages |
|---|---|---|---|

| Present Address (street, city, state, zip code)  ☑ Own □ Rent  13.1 No. Yrs | Present Address (street, city, state, zip code)  □ Own □ Rent  0.0 No. Yrs |
|---|---|
| 3791 S. Normandie Ave  Los Angeles, CA  90007 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, zip code)  □ Own □ Rent  No. Yrs | Former Address (street, city, state, zip code)  □ Own □ Rent  No. Yrs |
|---|---|

## IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  □ Self Employed | Yrs. on this job 7.2 | Name & Address of Employer  □ Self Employed | Yrs. on this job 0.0 |
|---|---|---|---|
| LA Community College District  770 Wilshire  Los Angeles, CA 90017 | Yrs. Employed in this line of work/profession 0.0 | | Yrs. Employed in this line of work/profession 0.0 |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Financial Aide Coordinator/Education | (323) 241-5301 | | |

If employed in current position for less than two years or if currently employed in more than one position, complete the following:

| Name & Address of Employer  □ Self Employed | Dates (from-to) | Name & Address of Employer  □ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

| Name & Address of Employer  □ Self Employed | Dates (from-to) | Name & Address of Employer  □ Self Employed | Dates (from-to) |
|---|---|---|---|
| | Monthly Income | | Monthly Income |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|

Freddie Mac Form 65 7/05          Page 1 of 4 Pages          Fannie Mae Form 1003 7/05

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income | $5,333.00 | $0.00 | $5,333.00 | Rent | $0.00 | |
| Overtime | $0.00 | $0.00 | $0.00 | First Mortgage (P&I) | $1,422.00 | $2,983.02 |
| Bonuses | $0.00 | $0.00 | $0.00 | Other Financing (P&I) | $1,203.00 | $0.00 |
| Commissions | $0.00 | $0.00 | $0.00 | Hazard Insurance | $91.04 | $95.11 |
| Dividends/Interest | $0.00 | $0.00 | $0.00 | Real Estate Taxes | $140.66 | $143.04 |
| Net Rental Income | $0.00 | | $0.00 | Mortgage Insurance | $0.00 | $303.74 |
| Other (before completing see the notice in "describe other income, below) | $2,000.00 | $0.00 | $2,000.00 | Homeowner Assn. Dues | $0.00 | $0.00 |
| | | | | Other | $0.00 | $0.00 |
| TOTAL | $7,333.00 | $0.00 | $7,333.00 | TOTAL | $2,856.70 | $3,412.91 |

* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income** — Notice: Alimony, child support, or separate maintenance income need not be revealed if the Borrower(s) or Co-Borrower(s) does not choose to have it considered for repaying this loan.

| B/C | Describe Other Income | | Monthly Amount |
|---|---|---|---|
| B | Alimony | | $2,000.00 |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.

Completed ☐ Jointly   ☑ Not Jointly

| ASSETS Description | Cash or Market Value |
|---|---|
| Cash deposit toward purchase held by | |
| List checking and savings accounts below | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | |
| Name and address of Bank, S&L, or Credit Union | |
| Acct no. | |
| Stocks & Bonds (Company name/number & description) | |
| stock 1 | $16,853.60 |
| Life insurance net cash value / Face amount: | |
| **Subtotal Liquid Assets** | $16,853.60 |
| Real Estate owned (enter market value from schedule of real estate owned) | $523,000.00 |
| Vested interest in retirement fund | $0.00 |
| Net worth of business(es) owned (attach financial statement) | $0.00 |
| Automobiles owned (make and year) | |
| Other Assets (itemize) | |
| **Total Assets a.** | $539,853.60 |

### LIABILITIES AND PLEDGED ASSETS

List the creditor's name, address and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities which will be satisfied upon sale of real estate owned or upon refinancing of the subject property.

| LIABILITIES | Monthly Payment & Months Left to Pay | Unpaid Balance |
|---|---|---|
| Name and address of Company — **BANK OF AMERICA** | Payment/Months | |
| Acct. No. 4342466000106 | $29.00 | $1,741.00 |
| Name and address of Company — **GEMB/LOWES** | Payment/Months | |
| Acct. No. 7981924051694954 | $46.00 | $1,000.00 * |
| Name and address of Company — **AES/BRAZOS/US BANK** | Payment/Months | |
| Acct. No. 1976347884PA00002 | $81.00 | $9,934.69 |
| Name and address of Company — **AES/BRAZOS/US BANK** | Payment/Months | |
| Acct. No. 1976347884PA00001 | $31.00 | $3,880.00 |
| Name and address of Company — **BRAZOS** | Payment/Months | |
| Acct. No. 6730823251 | $76.00 | $7,000.00 |
| Name and address of Company — **HOME COMING FUNDING NE** | Payment/Months | |
| Acct. No. 401140231 | $1,422.00 | $167,472.16 * |
| Name and address of Company — **BANK OF AMERICA** | Payment/Months | |
| Acct. No. 80240133857695 | $1,203.00 | $233,818.18 * |
| Alimony/Child Support/Separate Maintenance Payments Owed to: | | |
| Job Related Expense (child care, union dues, etc.) | | |
| **Total Monthly Payments** | $2,887.00 | |
| **Net Worth (a minus b)** | $114,638.26 | **Total Liabilities b.** $424,845.34 |

Freddie Mac Form 65 7/05     Page 2 of 4 Pages     Fannie Mae form 1003 7/05

1003 - URLA V01-0 ORIGINATOR

Loan Number: 138330    LS: ozawav    CRP: ozawav

VI. ASSETS AND LIABILITIES (cont.)

Schedule of Real Estate Owned (if additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 3791 S. Normandie Ave Los Angeles, CA 90007 | SFR | $523,000.00 | $491,290.34 | $0.00 | $2,626.00 | $231.70 | $0.00 |
| | | | | | | | |
| Totals | | $523,000.00 | $491,290.34 | $0.00 | $2,626.00 | $231.70 | $0.00 |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| Antoinette Brooks | | |
| A. Brooks | | |

| VII. DETAILS OF TRANSACTION | | VIII. DECLARATIONS | | | | |
|---|---|---|---|---|---|---|
| a. Purchase Price | $0.00 | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Borrower | | Co-Borrower | |
| b. Alterations, improvements, repairs | $0.00 | | Yes | No | Yes | No |
| c. Land (if acquired separately) | $0.00 | a. Are there any outstanding judgments against you? | ☐ | ☑ | ☐ | ☐ |
| d. Refinance (incl. debts to be paid off) | $489,280.34 | b. Have you been declared bankrupt within the past 7 years? | ☐ | ☑ | ☐ | ☐ |
| e. Estimated prepaid items | $1,465.01 | c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | ☐ | ☑ | ☐ | ☐ |
| f. Estimated closing costs | $2,028.90 | d. Are you party to a lawsuit? | ☐ | ☑ | ☐ | ☐ |
| g. PMI, MIP, Funding Fee | $0.00 | e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, or judgment? (This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes" provide details, including date, name and address of Lender, FHA or VA case number, if any and reasons for the action.) | ☐ | ☑ | ☐ | ☐ |
| h. Discount (if Borrower will pay) | $12,723.75 | | | | | |
| i. Total costs (add items a through h) | $419,498.00 | | | | | |
| j. Subordinate financing | $0.00 | | | | | |
| k. Borrower's closing costs paid by seller | $0.00 | f. Are you presently delinquent or in default of any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | ☐ | ☑ | ☐ | ☐ |
| l. Other Credits (explain) | | g. Are you obligated to pay alimony, child support, or separate maintenance? | ☐ | ☑ | ☐ | ☐ |
| Cash Deposit Towards Purchase | $0.00 | h. Is any part of the down payment borrowed? | ☐ | ☑ | ☐ | ☐ |
| Costs Paid Outside of Closing by You | $350.00 | i. Are you a co-maker or endorser on a note? | ☐ | ☑ | ☐ | ☐ |
| Amount Paid on your behalf by Lender | $0.00 | | | | | |
| m. Loan amount (exclude PMI, MIP, Funding Fee financed) | $444,500.00 | j. Are you a U.S. Citizen? | ☑ | ☐ | ☐ | ☐ |
| | | k. Are you a permanent resident alien? | ☐ | ☑ | ☐ | ☐ |
| n. PMI, MIP, Funding Fee financed | $0.00 | l. Do you intend to occupy the property as your primary residence? If "Yes," Complete question m below. | ☑ | ☐ | ☐ | ☐ |
| o. Loan amount (add m & n) | $444,500.00 | | | | | |
| | | m. Have you had an ownership interest in a property in the last three years? | ☑ | ☐ | ☐ | ☐ |
| p. Cash from/to Borrower (subtract j, k, l, & o from i) | ($26,845.99) | (1) What type of property did you own — Principal Residence (PR), Second Home (SH), or Investment Property (IP)? (2) How did you hold title to the home — solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | PR | | | |
| | | | S | | | |

IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

Acknowledgement. Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature Antoinette M Brooks | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X [signature: Antoinette M Brooks] | 10/28/06 | X | |

X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish this information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | ☐ I do not wish to furnish this information | CO-BORROWER | ☐ I do not wish to furnish this information | | |
|---|---|---|---|---|---|
| Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | Ethnicity: | ☐ Hispanic or Latino   ☐ Not Hispanic or Latino | | |
| Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African | Race: | ☐ American Indian or Alaskan Native   ☐ Asian   ☐ Black or African | | |
| | ☐ Native Hawaiian or Other Pacific Islander   ☐ White | | ☐ Native Hawaiian or Other Pacific Islander   ☐ White | | |
| Sex: | ☐ Female   ☐ Male | Sex: | ☐ Female   ☐ Male | | |

| To be Completed by Interviewer This application was taken by: | Interviewer's Name (print or type) Jeff Wade | | (Name and Address of Interviewer's Employer) Homecomings Financial |
|---|---|---|---|
| ☐ Face-to-face interview | Interviewer's Signature [signature: Jeff Wade] | Date 12/27/2006 | 2711 North Haskell, Ste. 1000 Dallas, TX 75204 |
| ☐ Mail | | | |
| ☑ Telephone | Interviewer's Phone Number (incl. area code) (877) 616-8185 | | |
| ☐ Internet | | | |

Loan Number: 136330          LS: czhww          CHR: czhww          1003-URLA 101-01GENERATOR

## Continuation Sheet/Residential Loan Application

| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark "B" for Borrower or "C" for Co-Borrower. | Borrower: | Antoinette M Brooks | | Agency Case Number: 12918547 |
|---|---|---|---|---|
| | Co-Borrower: | | | Lender Case Number: 136330 |

I/We understand that it is a federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States code, Section 1001, et. seq.

| Borrower's Signature | Antoinette M Brooks | | Date | Co-Borrower's Signature | | Date |
|---|---|---|---|---|---|---|
| X | *Antoinette M. Brooks* | | 12/28/06 | X | | |

Freddie Mac Form 65 7/05          Page 4 of 4 Pages          Fannie Mae form 1003 7/05

EXHIBIT F

Loan No: 136330

# IMPOUND AUTHORIZATION

The undersigned ("Applicant") has made an application with HOMECOMINGS FINANCIAL, LLC F/K/A HOMECOMINGS FINANCIAL NETWORK, INC. ("Lender") for a residential mortgage loan on property located at 3791 S. Normandie Ave, Los Angeles, CALIFORNIA 90007 ("Property"). By signing below, Applicant acknowledges and understands that an impound account (also called an escrow or trust account) is an account for payment of taxes, hazard insurance premiums, private mortgage insurance, and other items in connection with a mortgage loan as each becomes due. Impound accounts are not required except:

1) where required by a state or federal regulatory authority; or
2) where a loan is made, guaranteed, or insured by a state or federal governmental lending or insuring agency; or
3) upon a failure of Applicant to pay two consecutive tax installments on the Property prior to the delinquency date for such payments; or
4) where the original principal amount of such a loan is (i) 90% or more of the sale price, if the Property involved is sold, or is (ii) 90% or more of the appraised value of the Property securing the Loan; or
5) whenever the combined principal amount of all loans secured by the real property exceeds 80% of the appraised value of the Property securing the loans.

Lender does not require the establishment of an impound account as a condition to the execution of the Loan; however, nothing precludes the establishment of an impound account on terms mutually agreeable to Applicant and Lender. Applicant and Lender agree as follows:

_____ IMPOUNDS REQUIRED. We, the undersigned Applicant, understand that an impound account is required because our Loan falls in one of the above-described exceptions. Lender is hereby authorized and instructed to collect impounds in an amount necessary to pay our real estate taxes, hazard insurance, and, if applicable, mortgage insurance, on our behalf. Lender will notify us at close of escrow of the monthly payment amount for this account, in addition to the principal and interest payment.

__X__ IMPOUND OPTIONS. We, the undersigned Applicant, being aware that the establishment of an impound account is not required as a condition of our Loan, have elected the following:

_____ Applicant to pay impound amounts separately.
__X__ Applicant to include impound amounts with monthly principal and interest payment. Lender will notify Applicant at close of escrow of the monthly amounts for the impound account. Applicant understands that Lender will pay at least 2% simple interest per annum on the impound account as provided in Section 2954.8 of the California Civil Code.

_____
Antoinette M Brooks —Applicant


0000136330

# EXHIBIT G

FOR ASSISTANCE CALL 1 (213) 974-2111 OR 1 (888) 807-2111, OR ...

DETAIL OF TAXES DUE FOR — ASSESSOR'S ID. NO. 5036 001 014 08 000 — CK 92

PROPERTY IDENTIFICATION
ASSESSOR'S ID.NO.: 5036 001 014 08 000
OWNER OF RECORD AS OF JANUARY 1, 2008
SAME AS BELOW
MAILING ADDRESS

BROOKS,ANTOINETTE M
3791 S NORMANDIE AVE
LOS ANGELES CA 90007-4256

| AGENCY | AGENCY PHONE NO. | RATE | | AMOUNT |
|---|---|---|---|---|
| GENERAL TAX LEVY | | | | |
| ALL AGENCIES | | 1.000000 | $ | 1,476.06 |
| VOTED INDEBTEDNESS | | | | |
| CITY-LOS ANGELES | | .038541 | $ | 56.89 |
| METRO WATER DIST | | .004300 | | 6.35 |
| COMMNTY COLLEGE | | .022115 | | 32.54 |
| UNIFIED SCHOOLS | | .124782 | | 184.18 |
| DIRECT ASSESSMENTS | | | | |
| LACITY PARK DIST | (213) 473-9702 | | $ | 15.33 |
| LA STORMWATER | (213) 485-2402 | | | 7.78 |
| FLOOD CONTROL | (626) 458-5165 | | | 9.76 |
| CITY 911 FUND | (213) 978-1099 | | | 10.73 |
| COUNTY PARK DIST | (213) 738-2983 | | | 16.20 |
| TRAUMA/EMERG SRV | (866) 587-2862 | | | 64.20 |
| LA WEST MOSQ AB | (310) 915-7370 | | | 5.26 |
| CITY LT MAINT | (213) 847-1363 | | | 85.72 |

ELECTRONIC FUND TRANSFER (EFT) NUMBER
ID#: 19 5036 001 014 8 YEAR:08 SEQUENCE:000 2
PIN: 051714
For American Express, Mastercard and Visa payments call 1 (888) 473-0835 and have available the EFT number listed above. Service fees will be charged.
SPECIAL INFORMATION

INFORMATION ONLY

PROPERTY LOCATION AND/OR PROPERTY DESCRIPTION
3791 S NORMANDIE AVE LOS ANGELE
PETER TAYLOR TRACT N 50 FT OF W 50 FT
OF E 60 FT OF LOT 11

| | | |
|---|---|---|
| TOTAL TAXES DUE | | $1,971.10 |
| FIRST INSTALLMENT TAXES | DUE NOV. 1, 2008 | $985.55 |
| SECOND INSTALLMENT TAXES | DUE FEB. 1, 2009 | $985.55 |

VALUATION INFORMATION

| ROLL YEAR 08-09 | CURRENT ASSESSED VALUE | TAXABLE VALUE |
|---|---|---|
| LAND | 106,843 | 106,843 |
| IMPROVEMENTS | 40,763 | 40,763 |
| TOTAL | | 147,606 |
| LESS EXEMPTION: | | |
| NET TAXABLE VALUE | | 147,606 |

ASSESSOR'S REGIONAL OFFICE
REGION #09 INDEX: TRA:00210
WEST DISTRICT OFFICE
6120 BRISTOL PARKWAY
CULVER CITY CA 90230
(310)665-5300

ACCT. NO.: 572 PRINT NO.: 21659 BILL ID.:IB

THERE WILL BE A $50.00 CHARGE FOR ANY CHECK RETURNED BY THE BANK.
KEEP THIS UPPER PORTION FOR YOUR RECORDS. YOUR CANCELLED CHECK IS YOUR RECEIPT.

2008

INFORMATION ONLY

ASSESSOR'S ID. NO. 5036 001 014 08 000 — CK 92 — PK 2

BROOKS,ANTOINETTE M
3791 S NORMANDIE AVE
LOS ANGELES CA 90007-4256

PLEASE USE THIS FOR PAYMENT, ONLY IF YOUR TAXES ARE NOT PAID BY YOUR LENDER/MORTGAGE COMPANY.

2ND INSTALLMENT DUE — INDICATE AMOUNT PAID

PAYMENT DUE 02/01/09 → $985.55
IF NOT RECEIVED OR POSTMARKED BY 04/10/09
REMIT AMOUNT OF $1,094.10

MAKE CHECKS PAYABLE TO:
Please write the ASSESSOR'S ID. NO. on the lower left corner of your check.

LOS ANGELES COUNTY TAX COLLECTOR
P.O. BOX 54018
LOS ANGELES, CA 90054-0018

52999

09508000250360010140000098555000010941099920410

2ND

EXHIBIT H

Homecomings Financial
A GMAC Company

September 15, 2008

Antoinette M Brooks
3791 S Normandie Ave
Los Angeles CA 90007

RE:     Account Number        7401363304
        Property Address      3791 S Normandie Ave
                              Los Angeles CA  90007

Dear Antoinette M Brooks:

This is in response to your inquiry dated August 16, 2008, received August 18, 2008 regarding the above-referenced account.

It is our understanding the concerns with your recent appraisal have been addressed directly with PCV Muror Real Estate Services. While this company has a business relationship with Homecomings Financial, LLC, they are not owned or operated by our organization.

Private Mortgage Insurance (PMI) was a requirement for the above-referenced loan to close. Whenever the original loan-to-value (LTV) exceeds 80 percent of either the purchase price or appraised value (the lesser of the two), PMI is required. This was disclosed in the original loan documents. See enclosed application showing the disclosure as well as the Initial Impound Disclosure Statement.

In order for PMI to be waived, certain criteria must be met. You will receive a copy of the current guidelines for your loan under separate cover. According to the Homeowner's Protection Act (HPA), the PMI on accounts will automatically terminate when the LTV is first scheduled to reach 78 percent. The PMI on your account will automatically terminate in June 2013, if you choose not to proceed with the request to remove the PMI prior to this date.

Homecomings Financial, LLC does have an escrow account established for payment of your regular property taxes and homeowners insurance payments. The property taxes that went delinquent on your property were supplemental property taxes which are not included as part of the escrow payment. Supplemental taxes are the responsibility of the homeowner to remit payment and if they become delinquent, any penalties are charged to you, the customer. Homecomings Financial, LLC has issued the following additional payments from your escrow account to cover the outstanding delinquent supplemental tax bills

| Parcel Number | Amount Paid |
|---|---|
| – 5036001015 | $259.60 |
| 5036001014 | $257.61 |

The homeowner's insurance was disbursed on February 19, 2008 in the amount of $1,771.15 for the March 5, 2008 renewal with Farmer's Insurance.

If you have any further questions regarding this matter, please contact Customer Care at 1-800-206-2901.

Customer Care
Loan Servicing

Enclosures

EXHIBIT I

ANALYSIS TYPE: 1/6 AGGREGATE
PROJECTED ESCROW BALANCE AS OF: APRIL 30, 2008

ACCOUNT NUMBER: 7401363304
-568.49  *

\* Projected balance reflects all receipts and disbursements made prior to the date of analysis and all mortgagor payments and disbursements anticipated to be made prior to the effective date of analysis.

| DATE | RECEIPTS | PROJECTED DISBURSEMENTS | CUR. BAL. PROJECTIONS | REQ. BAL. PROJECTIONS |
|------|----------|-------------------------|------------------------|------------------------|
| PROJECTED BALANCE | | | 568.49- | 1,417.07 |
| 05/01/08 | 1,012.23 | 303.74- | 140.00 | 2,125.56 |
| 06/01/08 | 1,012.23 | 303.74- | 848.49 | 2,834.05 |
| 07/01/08 | 1,012.23 | 303.74- | 1,556.98 | 3,542.54 |
| 08/01/08 | 1,012.23 | 303.74- | 2,265.47 | 4,251.03 |
| 09/01/08 | 1,012.23 | 303.74- | 2,973.96 | 4,959.52 |
| 10/01/08 | 1,012.23 | 303.74- | 3,682.45 | 5,668.01 |
| 11/01/08 | 1,012.23 | 303.74- | 4,390.94 | 6,376.50 |
| 12/01/08 | 1,012.23 | 303.74- | 5,099.43 | 7,084.99 |
| 12/01/08 | .00 | 870.22- | 4,229.21 | 6,214.77 |
| 12/01/08 | .00 | 2,495.19- | 1,734.02 | 3,719.58 |
| 01/01/09 | 1,012.23 | 303.74- | 2,442.51 | 4,428.07 |
| 02/01/09 | 1,012.23 | 303.74- | 3,151.00 | 5,136.56 |
| 03/01/09 | 1,012.23 | 1,771.15- | 2,392.08 | 4,377.64 |
| 03/01/09 | .00 | 303.74- | 2,088.34 | 4,073.90 |
| 04/01/09 | 1,012.23 | 303.74- | 2,796.83 | 4,782.39 |
| 04/01/09 | .00 | 870.22- | 1,926.61 | 3,912.17 |
| 04/01/09 | .00 | 2,495.19- | 568.58- | 1,416.98 L |

L  ANTICIPATED LOW POINT FOR ANALYSIS PERIOD:
-568.58

MAXIMUM PERMITTED LOW-POINT: (EXCLUDING MIP)
1,416.98

---

Section 3:          | SHORTAGE | 1,985.56 |

---

ESCROW ACCOUNT ACTIVITY (AUGUST 01, 2007 – APRIL 30, 2008)

(\*) A Receipt or Disbursement Amount or Date was different than a previous projection.

| DATE | TXN | PREV PROJ AMOUNT | PREV PROJ BALANCE | TXN | ACTUAL AMOUNT | ACTUAL BALANCE |
|------|-----|-------------------|--------------------|-----|----------------|-----------------|
| BEGINNING BALANCE | | | 3,178.38 | | | 684.83- |
| 08/01/07 | PAYMENT | 939.40 | 3,814.04 | PAYMENT | 1,261.33 | 272.76 |
| 08/01/07 | REGULAR PMI | 303.74- | 3,814.04 | REGULAR PMI | 303.74- | 272.76 |
| 09/01/07 | PAYMENT | 939.40 | 4,449.70 | PAYMENT | 1,261.33 | 1,230.35 |
| 09/01/07 | REGULAR PMI | 303.74- | 4,449.70 | REGULAR PMI | 303.74- | 1,230.35 |
| 10/01/07 | PAYMENT | 939.40 | 5,085.36 | PAYMENT | 1,261.33 | 2,187.94 |
| 10/01/07 | REGULAR PMI | 303.74- | 5,085.36 | REGULAR PMI | 303.74- | 2,187.94 |
| 11/01/07 | PAYMENT | 939.40 | 5,721.02 | PAYMENT | 1,261.33 | 2,579.05 |
| 11/01/07 | REGULAR PMI | 303.74- | 5,721.02 | TAX | 870.22- | 2,579.05 |
| 11/01/07 | | .00 | 5,721.02 | TAX | 2,495.19- | 83.86 |
| 11/01/07 | | .00 | 5,721.02 | REGULAR PMI | 303.74- | 219.88- |
| 12/01/07 | PAYMENT | 939.40 | 6,356.68 | PAYMENT | 1,261.33 | 737.71 |
| 12/01/07 | REGULAR PMI | 303.74- | 6,356.68 | REGULAR PMI | 303.74- | 737.71 |
| 12/01/07 | TAX | 858.25- | 5,498.43 | | .00 | 737.71 |
| 12/01/07 | TAX | 2,457.09- | 3,041.34 | | .00 | 737.71 |
| 01/01/08 | PAYMENT | 939.40 | 3,677.00 | PAYMENT | 1,261.33 | 1,695.30 |
| 01/01/08 | REGULAR PMI | 303.74- | 3,677.00 | REGULAR PMI | 303.74- | 1,695.30 |
| 02/01/08 | PAYMENT | 939.40 | 4,312.66 | PAYMENT | 1,261.33 | 1,186.48 |
| 02/01/08 | REGULAR PMI | 303.74- | 4,312.66 | FIRE | 1,771.15- | 1,186.48 |
| 02/01/08 | | | 4,312.66 | REGULAR PMI | 303.74- | 881.74 |
| 03/01/08 | PAYMENT | 939.40 | 4,254.74 | | .00 | 881.74 |
| 08/01/08 | FIRE | 997.32- | 4,254.74 | | .00 | 881.74 |
| 03/01/08 | REGULAR PMI | 303.74- | 3,951.00 | | .00 | 881.74 |
| 04/01/08 | PAYMENT | 939.40 | 4,586.66 | | .00 | 881.74 |
| 04/01/08 | REGULAR PMI | 303.74- | 4,586.66 | | .00 | 881.74 |
| 04/01/08 | TAX | 858.25- | 3,728.41 | | | |